Last case this afternoon is 413-0197-0198. City of Jerseyville v. Robert Higgins. For the appellant is Thomas Kelty. You are he, sir? I am. And for the appellee is Allison Morton. You are she? James Kelty. You may proceed. Good afternoon, gentlemen. Thomas Kelty for Robert Higgins. Good afternoon. Thank you. In my experience, it's rare for this court or any other court to entertain an appeal. It seems so simple, so to speak, and rather straightforward. But we're here because of a process that took place in the trial court, which is confusing at best and in many ways falls outside the rules. I have to speak up a little louder, Mr. Kelty. I'm sorry. Go ahead. Rules that we're all obligated to follow. Is that loud enough, Judge? Go ahead. Thank you. Your Honor, this case arises out of an ordinance violation, alleging violations of codes relating to junk and trash and refuse. There's some confusion with regard to unsightliness throughout the record in this case. Although, as you'll see in our argument, which you've read, is that unsightliness is really not an issue in this case. These cases were combined by this court at our motion. They involve the same property, essentially the same subject matter. Counsel, I noticed you did not mention the motor vehicle, which was not currently licensed. That's correct. That was also one of the allegations, and I think you've admitted to that, correct? That is an issue, yes. It's an issue or is it not an issue because it was admitted at the trial level and you've admitted to it in the brief. I believe it was, Your Honor, yes, and that's not an issue. That was a personal vehicle. It was unlicensed.  Excuse me? Okay, so really that's, we can start off then, this oral argument, with this court knowing that it can affirm the trial court, at least as to the ordinance violation concerning the vehicle. Yes. Okay. Following a bench trial in March of 2012, an argument later in July and December, this court ruled, as it did, that Mr. Higgins is in violation of various sections of the city code. The first real issue for Mr. Higgins in this case is the lack of specificity of the citation itself and the confusion, if you will, in the citation itself, whether it's the people of the state of Illinois or whether it's the city of Jerseyville. It may seem like a non-issue, but as I understand the case law, you must identify who it is that's charging the violation. The record from the clerk's office is documents that both speak in terms of people of the state of Illinois and in terms of the city of Jerseyville. And I don't recall that ever that the case was, originally was docketed people, was ever changed or modified by the trial court. Did it create any prejudice to you or did you raise any issue about prejudice at trial? I don't believe so, Your Honor. I think everybody understood that there was a city of Jerseyville. Well, then it's sloppy practice, but what is there that we should do on appeal? Pardon me, Your Honor? It's sloppy practice, but what relief are you entitled to then on appeal? It's not an issue on appeal, but it's sloppy practice, which is one of the fundamental problems in this case, Judge. The witness testimony in this case on behalf of the city is virtually nil. I called Mr. Higgins to testify. He testified. There was, as I recall, no cross-examination of him. There was discussion between he and the court as to issues in the case, and there were volunteer statements from the audience, if you will, by the code officer of the city. How does that happen in a trial? Judge, that's the sloppiness I'm getting back to. Is this the Jersey County common law procedure that provides for that? Exactly. You have it, Judge. Exactly. And he just blurted it out, and there it was. It's a very, very casual kind of procedure, and the Jersey County Circuit Court. And that's what led to these people, Mr. Higgins and others, but the others aren't involved in this, but Mr. Higgins finally saying, you know, I've had enough of this repeated series of citations from the city, and that's how I get involved in it. So during the course of the trial, and one of the real issues here is the series of photographs that were taken by the city. Yeah, it's kind of hard to understand from the record. There's some way some photographs get placed either on the bench or within the court's reach, and then the court, tell me about it. The court somehow just grabs them and starts looking at them. It's pretty close, Judge. What happened to that? The council for the city had these photographs that were sensibly taken by someone working for the city, and they were photographs of the property, and he had them. He was at the bench. I was sitting at the council table because that's where the microphones are, and those were proffered by the city's council to the court saying, Judge, here are the photographs,  never identifying them by date or subject or name or number, anything where this court could look at those documents and say, this is Exhibit 1 that the court was referring to when it's made its decision, and again, that makes for a poor record, which I think you may have seen the trial court recognize, not the best record in the world the way it was. And there was ample opportunity to do that the right way and make a clean record, but that never happened. So I attempted to object. I did object. I attempted to object more extensively, and I wasn't given the opportunity. The court summarily went through the photographs and said, this is that, and reached its conclusion that there were violations based upon what the court had seen in its view of the property and the photographs themselves. So with that, the trial was over. The court did. Well, suppose we agree with you on your arguments regarding the junk, trash, and refuse, because the photographs were improperly considered. We're left then with the ordinance violation to which your client admitted, and you've confessed to it, and that is possessing the motor vehicle without proper licensing. What should this court do in that situation? The court should affirm with regard to the vehicle and remand with regard to the other issues. The ordinances are written in such a way that you can't discern from that exactly what is being charged, and from the citation itself. It's not junk consisting of, which you could tie into the photographs. Well, let me ask you this. What was the total fine? It's $6,000-something? $6,700 and some dollars, I believe, Judge. There was junk, trash, refuse, and the vehicle. That's four. Would it be equitable then? Four allegations. Would it be equitable to say if three of the four were not proved that the fine should be reduced by 75%? I think it would be. I don't know. I'm just asking. Junk, for example. There was no testimony of junk. Everything that the city claims is junk is machinery that Mr. Higgins uses in his business. Testimony there, in fact, the unsolicited statement from the city code officer, is that the city doesn't have any problem with the equipment out there. They just like it to look nice. Well, our laws are not to be defined that way by someone that works for the city. It says if they look nice, they're okay. They're either junk or they're not, or whatever else they may be alleged to consist of. So this case really gets down to following the rules. And it's only fair to the people that live in that city that are charged with code violations that they have a clear understanding of what's being alleged and a clear understanding of what is being proven in the circuit court. And this simply did not happen. I'm going to turn to the attorney's fees unless there are other questions. The attorney's fees were awarded by the trial court. There's no authority for attorney's fees to be awarded by the court to the city of Jerseyville in this case. Nor are attorney's fees allowed in any ordinance case in any city in the state of Illinois. Well, how about the Code of Ordinances of the City of Jerseyville, Title I, Chapter 4, Section 1-4-1. It says that in addition to the fines referred to in other sections of this code, which may be levied in the event of a violation of any provision of this code, the city may also levy a charge for attorney's fees, court costs, and other expenses against the violator not to exceed $500. Why doesn't that allow for the court to assess attorney's fees? Dillon's Rule and the American Rule. First of all, under Dillon's Rule, the city only has the authority specifically granted to it by the Illinois General Assembly. Secondly, the American Rule is no fees, no fees shifting, unless authorized by statute or agreed to by contract. Neither of those exist in this case. That ordinance can say that Monday is Tuesday, Judge, but that doesn't make it right. There's no legal authority for the city to adopt and seek to enforce that kind of ordinance. So the statute is unconstitutional, the ordinance? Well, if it goes to the point of being unconstitutional, I suppose it is, Judge. It has no legal basis. Well, how would you have this court phrase, it has no legal basis, because what? Because it lacks the authority delegated, necessary to be delegated, by the Illinois General Assembly in our statutes. And those are legislative issues. And to that extent, Judge, they are a violation of the Illinois Constitution. Anything further, Counsel? Nothing further. Okay, thank you very much. Ms. Lorton? Even as attorney fees, excuse me, I'll let you. Go right ahead. If they please the court, I'll be happy to. There you go. I thought you might. Assuming attorney fees are allowed, why would they exceed $500 in this case? I would refer to the fact that this is a consolidated case. The judge actually entered a finding of guilt in regards to two separate ordinance violations, 11-OB-139 and 11-OB-192. So that ordinance means $500 for each count, if you will. Although this is two different cases. Correct. Okay. Now, they're identical. They're two different citations for the same violation of the ordinance, this nuisance ordinance that we're dealing with, on two separate dates. That one, I believe the first date of the first citation was June the 20th of 2011, and a separate citation was filed on September the 21st, 2011. That's what resulted in the two different case numbers, both citing the same nuisance ordinance. And if I may, I'd like the nuisance ordinance that we're talking about that's passed by the city of Jerseyville prohibits, pretty short and sweet, quote, the storing of junk, trash, or refuse on private property within the city or any motor vehicle which is not currently licensed or operable. I think we've resolved the vehicle issue. Mr. Higgins himself, during the trial, acknowledged that that's his vehicle, that's his property, and it's not licensed. The second aspect of the violation, and in my opinion the second area in support of a conviction with regards to these citations, is what's referred to in the record when the judge was discussing this concrete, dirt, and road debris. Volume three of the record on appeal is this, admittedly, very casual and informal proceeding before Judge Pistorius at the trial court. Mr. Higgins, the defendant, is seated. The city attorney actually calls Mr. Higgins first, establishes that this is, in fact, his property. The judge would like to speed things up to show me the pictures that you have. I'd like to note also, counsel, before the bench trial, there was a motion to dismiss filed on January 27th with regards to the specificity of the allegations. In response to that motion to dismiss, the judge granted leave to conduct discovery. Mr. Higgins received copies of all the photographs presented in advance. Obviously, what was filed isn't part of the record and given to Higgins during discovery, but there was extensive written discovery, and he was provided two months to ask the city for whatever questions it wanted to with regards to this violation, and with regards to more specificity as to what they're claiming. When we finally get to the trial court, the judge, obviously, is reviewing the photos. If you can tell from the record, he's speaking directly to Mr. Higgins. They are going through each photograph one by one. Nothing you said, however, relieves the city of the obligation of properly laying a foundation and admitting the photographs into evidence. And I would refer the court to the record itself. At one point, Mr. Lorton, the city attorney in that trial, asked the court, do we need to lay a foundation for this? I believe Judge Pistorius' response is Mr. Higgins is acknowledging this is his property. These are his things. We've been going over this for about an hour. And whether or not objection was properly made, we cite in our brief the case of Gillespie v. Chrysler Motors, which basically stands for the proposition that where evidence is admitted, subject to later connection, and proof of that evidence is never presented, the party opposes the evidence, must both object to the lack of proof at the time the evidence is introduced, and later renew the objection by making a timely motion to strike. That's simply not in the record. But even without the photos, we have the admissions of Mr. Higgins on the stand, discussing with the judge, talking about this concrete, this road debris. They go into an entire dialogue of where it came from. He's waiting for a gentleman to remove it off of his property. It's the result of a project he did on Route 16. I mean, it's clearly a pile of concrete and dirt. What counsel also forgot, and what's reflected in the record, four months later, Judge Pistorius personally goes to Mr. Higgins' site himself. He made a finding on March 27, 2012, that says, unlicensed T-Bird, road debris, pile of concrete and dirt, I find to be in violation of city ordinance. Reset it, and if this is what you need to correct, he instructed the city to go out there and give a list of any other issues they had. Judge Pistorius personally went out there on July 9, and viewed a pile of dirt, concrete, and debris, based on his personal viewing of the property, entered a supplement order on July 9, that said, violation is ongoing. Let's reset it after abatement. Assuming that this has been four months now, Mr. Higgins would still just clean up the pile of concrete and the dirt. It's not until November of that same year, and four months later, we're finally back at court at presumably the sentencing type stage. There's no dispute that he didn't actually clean up his property until November 19, 2012. That's what resulted in the fines, Your Honor, is over $6,000. The judge determined it was $10 per day for the first couple hundred days before the actual trial, and then $25 per day after the date he specifically instructed to clean it up. It took him four more months until, you know, this is the December 12 hearing, by the time these fines are actually instituted. And as counsel mentioned earlier, this is simply a case before this appellate court on whether or not the city met its burden. A lot of the brief and argument at times is a thinly veiled constitutional challenge, whether or not the city has the right to promulgate what somebody's property can look like. That's not the issues that we're here upon today. It's simply whether or not the city met its burden. With photographs, whether properly made it or not, Mr. Higgins' own admissions and the judge's, and the judge's prior fact went to the property himself, determined that to be a violation, and entered an order accordingly. Well, he was already determined it was a violation, wasn't he? Correct. He actually... Without seeing it. Without seeing, based on the photos alone. When he went back out four months later and saw the condition that was reflected in the photos was still in existence, determined to be an ongoing violation, we set the matter for a determination of the fines. There was no fines assessed. What if the court shouldn't have looked at the photos improperly, because they weren't properly presented to the court? Even without the photos, they're still... Reading the transcript, you still have the back... Excuse me. If the court hadn't seen those photos, the court wouldn't have gone out and made an inspection of the premises?  Mr. Higgins was still on the stand. He testified to the conditions that were being discussed in the photos. Mr. Higgins admitted that he has concrete and dirt on his property. The volume... I don't think Mr. Higgins admitted anything of an incriminating nature with regard to the ordinance violations except about the car itself, not about junk, trash, or refuse. I would agree with you. So there's no evidence before the court about junk, trash, and refuse that is of an incriminating nature except for the photographs. So if this court doesn't think the photographs were properly considered by the trial court, the city's left with the ordinance violation regarding the vehicle only. Do you agree with that? Careful, there was a lot there. Yes and no, Your Honor. And I think where, if you read through the trial record, what the judge and Mr. Higgins and Mr. Kelty were really getting at is Mr. Higgins' industry. He's a contractor. He's going to have concrete, bulldozers, equipment, that sort on his property. And there was a free exchange of, well, what is this? What's that used for? Why do you have it there? The discussion with regards to the concrete and the road debris, and I'd be happy to pull the record for you. They talk about, well, somebody is supposed to come pick this up on my property. It's still there. The judge made a determination that the bulldozers, those things, that's not unsightly. That's not junk, debris, refuse. That's fine. We're not worried about that. But he made a determination that this pile of dirt, this concrete, this debris from doing work on a road does constitute under the ordinance as is written, trash, refuse, unsightly, given the aesthetics of the neighborhood, based upon the definition of what those terms are in our city ordinance. He made that finding a fact, which I believe, right or wrong, he has the authority to do. Well, if we were in a marriage case and there was a custody dispute and the judge said, she's messy, and that would encompass, she's trashy. That's the basis for my decision. We'd be somewhat nonplussed by that. What do you mean? I read those comments in the record about, that's pretty trashy. I don't know which photograph he was pointing at. Some of the photos, frankly, look pretty good for someone running a construction business. And some of them don't. Your Honor, I see your point exactly. That's part of the reason why, obviously, we're here, is because this is not the cleanest record. But with that being said, we're here on a ponderance of the evidence standard. The judge is the trier of fact. Take out those photos. You still have the back and forth and the testimony of Mr. Higgins himself. Anyone testified besides Higgins? And some guy in the cold. Hey, do you know anything about this case? That was Jeff Wilson. He's the code enforcement officer who was sitting in the gallery at the time. And Mr. Pistorius, excuse me, Judge Pistorius, in order to, I guess, shorten things up a little bit, just decided to ask him a question. So, Paul, just play with me for a second. This court says, okay, you've got enough for the vehicle. We're not really sold about the other three counts. Would you agree with counsel that it would be proper for this court to reduce the amount of the fine by 75 percent? I would disagree with that, Your Honor, especially in light of the trial court's determination of how he set that fine. We're not talking about a couple weeks' time period where we're arguing about this is my construction equipment. Well, it says $10 a day up to some date, and then $25 a day past that. I think the math would work out the same if you said there's only one violation, $10 for that car that was out there up until some point, and then $25 thereafter. If you did that for the car, the refuse, the trash, and the junk, wouldn't you end up with the fine being 25 percent of actually what was assessed? I would suggest, you know, I would play along with your example and half. You know, I would consider the concrete all to be collectively trash and rubbish. My math might be wrong. I don't know. But, no, just I understand the court's point, and I see. Well, it would appear that the concrete and the road refuse is the more egregious violation in the court's mind. Is that fair? In the city's mind as well, because this has been an ongoing issue. You can see it. Exactly. The car is kind of tucked behind another vehicle. It actually doesn't look like it's very rusty. Maybe they can do something with it. As the judge indicated, just move it. All he has to do is simply move it into his garage, and he's not in violation of the ordinance. Well, wasn't it a Thunderbird he was fixing up? That's what the testimony suggested, yes. It was a personal vehicle that he was reworking. The judge even indicated during the case. Did the court take that into consideration? I can't answer that. I don't know. I was teasing. I'd just like to speak briefly with regards to the attorney's fees provision. Your Honor, the counsel cited Dillian's rule, and my understanding of that rule is if there is a conflict between an ordinance and a state law, then the state law is less controlled. But I'm not aware of any state law, nor is none cited by counsel that prohibits a city from propagating an ordinance that allows for the recovery of its fees in prosecuting these ordinance violations. So we would stand with the case. Are you aware of any case that does support that proposition? We cited a case that upheld an award of attorney's fees in my brief. City of McHenry v. Subonda, 2011, Illinois, Act II, 100534, also discussed the review of an attorney's fees will not be disturbed absent an abuse of discretion when the same is provided for by statute or ordinance. I had seen that. I see now it's on page 13. Thank you. I concede there ain't a remainder of my time unless you have any further questions. Thank you very much. Thank you, counsel. Mr. Utilty, anything further, sir? Very quickly, Your Honor. With regard to the legal fees issue, the law is that the General Assembly permits municipalities to do what they may do. The General Assembly creates municipalities. It's not the adverse of that that a city can do whatever it wants to do unless the General Assembly says no. And that's precisely what Dillon's rule is about. And if there's an issue as to whether or not it is permitted by the General Assembly, then it's a strict construction rule against a municipality exercising a given power. This case is all about connecting the dots between whatever the court was looking at and wherever the court decided. There's no evidence, I don't believe, other than the photos themselves. This property is in an industrial area. It's not your typical subdivision neighborhood where this guy's running a business that's sort of Mrs. Jones's home. It's surrounded by that, and it is what it is. So I believe that, and incidentally, with regard to the pile of dirt being unsightly, there's no application of unsightliness in this case. It's in the statute or in the ordinances. It's not an allegation in this case. It's junk, trash, or refuse. So with that, I will rest. Again, I will agree with the court if there's a reduction in the fine. Okay, thank you, Counselor. Thank you. This matter of advisement being recessed.